IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| FIDELITY NATIONAL TITLE INS. CO., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:07-cv-0213 |
| ) | Judge Trauger |
| ARCHER LAND TITLE, LLC, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Pending before the court is the Motion for Summary Judgment filed by the plaintiff, Fidelity National Title Insurance Co., (Docket No. 16), to which the defendant has responded, (Docket No. 22), and the plaintiff has replied, (Docket No. 29). For the reasons discussed herein, the plaintiff's Motion for Summary Judgment will be granted.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 31, 1999, the plaintiff and the defendant's corporate predecessor entered an Issuing Agency Agreement (the "Agreement").[1] Under the terms of the Agreement, the plaintiff appointed the defendant[2] its agent to "countersign and issue title insurance commitments,

---

[1] Unless otherwise noted, the facts are drawn from the Complaint (Docket No. 1), the parties' summary judgment briefs (Docket Nos. 17, 22, and 29), and the affidavits and declarations submitted in support of those briefs. Although facts are drawn from submissions made by both parties, on a motion for summary judgment, all inferences are drawn in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

[2] There is no dispute that the defendant named in this lawsuit is the successor of the entity that was a party to the Agreement, and thus the term "defendant" refers both to the entity named

1

binders, guarantees, endorsements, [and] title insurance policies" on the plaintiff's behalf in a region that included, by subsequent amendment to the Agreement, the state of Tennessee. Specifically, the Agreement provides that the defendant affirmatively covenanted to:

> Receive and process applications for Title Assurances in accordance with the provisions of state law, in conformity with usual and customary practices and procedures, prudent underwriting principles and in full compliance with manuals, instructions, and bulletins of [plaintiff] from time to time given to [defendant].

The defendant additionally covenanted to "[c]omply with all applicable federal, state and local laws including statutes, ordinances, rules, regulations and judicial opinions."

The Agreement further provides that, in the event that "a Loss sustained or incurred [by plaintiff] for a matter arising under this Agreement resulted or arose from the negligent, willful or reckless conduct of [defendant], . . . then [defendant] shall reimburse [plaintiff] for the Loss." The Agreement specifically states that the defendant is liable to the plaintiff for a loss stemming from the defendant's failure "to comply with the terms and conditions of this Agreement." Moreover, the defendant agreed that the plaintiff is "fully authorized and empowered, in its absolute discretion, to control, defend, prosecute, settle, compromise, and/or dispose of any claim, litigation or proceeding for which [plaintiff] may be liable," and that the defendant has no authority with respect to such litigation. Finally, the Agreement provides that, in the event of an alleged breach, the Agreement shall be interpreted according to California law and that the unsuccessful party in litigation shall pay the successful party's court costs and reasonable attorney's fees.

---

as defendant and to its predecessor entity that was a party to the Agreement.

This case arises from three transactions in which the defendant allegedly breached the Agreement and acted negligently, resulting in losses to the plaintiff.

**Blackburn Fork Transaction**

On December 20, 2002, the defendant conducted a real estate closing involving real property located at 1565 Blackburn Fork Road in Cookeville, Tennessee (the "Blackburn Fork Transaction"). In that closing, the purchasers of the property, Michael B. Emery and Jennifer N. Emery, borrowed $100,000 from Key Bank USA and, to secure that indebtedness, executed a deed of trust with Key Bank USA as beneficiary. The defendant had the deed of trust notarized, but the notary acknowledgment did not include the Emerys' names and was not dated.

On April 1, 2003, the defendant issued a Final Mortgage Title Policy insuring the deed of trust as a first priority lien against the property. In the policy, the defendant obligated the plaintiff to insure Key Bank USA against loss or damage sustained by reason of any defect in, or lien or encumbrance on, the title.

On February 24, 2005, the Emerys filed for bankruptcy, and a trustee was appointed for the estate. The trustee filed a complaint asserting that the deed of trust was void because the notary acknowledgment did not include the Emerys' names. On February 3, 2006, the plaintiff paid the trustee $13,500 to dismiss the complaint. The plaintiff also alleges that it incurred attorney's fees and expenses of $5,259.82 relating to that suit.

**East Lake Cove Transaction**

On April 16, 2003, the defendant conducted a real estate closing involving real property located at 605 East Lake Cove in Lavergne, Tennessee (the "East Lake Cove Transaction"). In that closing, the purchasers of the property, Andy M. Ross and Sherry E. Taylor, borrowed

$115,000 from U.S. Bank National Association and, to secure that indebtedness, executed a deed of trust with U.S. Bank National Association as beneficiary. The defendant had the deed of trust notarized, but the notary acknowledgment did not include Mr. Ross's and Ms. Taylor's names.

On May 1, 2003, the defendant issued a Final Mortgage Title Policy insuring the deed of trust as a first priority lien against the property. In the policy, the defendant obligated the plaintiff to insure U.S. Bank National Association against loss or damage sustained by reason of any defect in, or lien or encumbrance on, the title.

On February 10, 2005, Mr. Ross and Ms. Taylor filed for bankruptcy, and a trustee was appointed for the estate. The trustee filed a complaint asserting that the deed of trust was void because the notary acknowledgment did not include Mr. Ross's and Ms. Taylor's names.

On August 5, 2005, the plaintiff paid the trustee $19,000 to dismiss the complaint. The plaintiff also alleges that it incurred attorney's fees and expenses of $1,557.97 relating to that suit.

**Malibu Canyon Transaction**

On July 18, 2003, the defendant conducted a real estate closing involving real property located at 404 Malibu Canyon Drive in Columbia, Tennessee (the "Malibu Canyon Transaction"). In that closing, the purchasers of the property, Ernest J. Baptista, Jr. and Alexandra E. Baptista, borrowed $89,000 from First Indiana Bank, N.A. and, to secure that indebtedness, executed a deed of trust with First Indiana Bank, N.A. as beneficiary. The defendant did not record the deed of trust until August 15, 2003.

Also on August 15, 2003, the defendant issued a Final Mortgage Title Policy insuring the deed of trust as a first priority lien against the property. In the policy, the defendant obligated

the plaintiff to insure First Indiana Bank, N.A. against loss or damage sustained by reason of any defect in, or lien or encumbrance on, the title.

On October 24, 2004, the Baptistas filed for bankruptcy, and a trustee was appointed for the estate. The trustee filed a complaint asserting that the deed of trust was void because the deed of trust was not timely recorded. On September 12, 2005, the plaintiff paid the trustee $34,400 to dismiss the complaint. The plaintiff also alleges that it incurred attorney's fees and expenses of $8,826.60 relating to that suit.

## ANALYSIS

The plaintiff alleges that the defendant's omissions with respect to the three transactions constituted breaches of the Agreement and negligence. The plaintiff further alleges that it is entitled to compensatory damages for the losses it suffered as a result of the defendant's actions. Specifically, the plaintiff seeks a judgment in the amount of $107,384.52, representing the cost to the plaintiff of settling the lawsuits arising from the three transactions, attorney's fees and expenses relating to those lawsuits, and attorney's fees relating to the plaintiff's prior attempts to obtain reimbursement from the defendant. Because the plaintiff in this action is a California corporation with its principal place of business in Florida and the defendant is an Indiana limited liability company with its principal place of business in Indiana, and because the amount in controversy exceeds $75,000, this court has subject-matter jurisdiction based in diversity. *See* 28 U.S.C. § 1332(a) (2007).

**I.     Choice of Law**

As a preliminary matter, the parties' arguments with respect to the choice of law applicable in this action must be addressed. A federal court sitting in diversity jurisdiction

5

Case 3:07-cv-00213   Document 38   Filed 10/30/07   Page 5 of 17 PageID #: 456

applies the laws of the state in which it sits, including that state's laws regarding choice of law. *See Johnson v. Ventra Group, Inc.*, 191 F.3d 732, 738 (6th Cir. 1999) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 490 (1941)).

Under Tennessee law, where a contract includes a choice of law provision, "questions of contract interpretation are governed by the law of the state the parties intended." *Freeman Mgmt. Corp. v. Shurgard Storage Ctrs., Inc.*, No. 3:06cv0736, 2007 WL 1556604, at *5 (M.D. Tenn. May 24, 2007) (citing *Frizzell Constr. Co. v. Gatlinburg, L.L.C.*, 9 S.W.3d 79, 85 (Tenn. 1999)). In this case, the Agreement specifically provides that it is to be construed according to the laws of the state of California. (Docket No. 1 Ex. A at 5) As the parties do not dispute the validity of the Agreement's choice-of-law provision or its applicability to the plaintiff's contract claims, this court will apply California law in interpreting the Agreement.

However, the parties dispute which state's statute of limitations determines whether the plaintiff's claims regarding the Blackburn Fork Transaction were brought in a timely fashion.[3] The defendant asserts that the California statute of limitations applies, while the plaintiff claims that the Tennessee statute governs. The Agreement's choice of law provision does not determine which statute of limitations applies because, in the absence of a specific indication that the parties intended a particular state's statute of limitations to apply, such provisions "are generally understood to incorporate only substantive law, not procedural law such as statutes of limitation[s]." *Phelps v. McClellan*, 30 F.3d 658, 662 (6th Cir. 1994) (citing *Fed. Deposit Ins. Corp. v. Petersen*, 771 F.2d 141, 142 (10th Cir. 1985)). The parties did not clearly express their

---

[3]There is no dispute that the plaintiff timely raised its claims relating to the East Lake Cove and Malibu Canyon Transactions.

6

intent that the California statute of limitations would apply to claims arising out of the Agreement; thus the Tennessee statute governs. *See Cole v. Mileti*, 133 F.3d 422, 438 (6th Cir. 1998) ("Absent an express statement that the parties intended another state's limitations statute to apply, the procedural law of the forum governs time restrictions on an action for breach, while the law chosen by the parties governs the terms of their contract."); *Atlantic Richfield Co. v. Monarch Leasing Co.*, 84 F.3d 204, 205 (6th Cir. 1996) ("The statute of limitations of the forum state applies in federal diversity cases pursuant to *Walker v. Armco Steel Corp.*, 446 U.S. 740, 753, 100 S.Ct. 1978, 1986, 64 L.Ed.2d 659 (1980).").

By Tennessee statute, the limitations period for a breach of contract claim is six years and begins to run at the time the claim accrues. Tenn. Code Ann. § 28-3-109(a)(3) (2007). A contract claim accrues at the time of the alleged breach.[4] *See Lohmann v. Allmerica Fin. Life Ins. & Annuity Co.*, No. 3:05-cv-199, 2007 U.S. Dist. LEXIS 55189, at *10 (E.D. Tenn. July 30, 2007); *Greene v. THGC, Inc.*, 915 S.W.2d 809, 810 (Tenn. Ct. App. 1995). Moreover, the statute does not incorporate a so-called "discovery rule"—that is, the limitations period runs

---

[4]The plaintiff asserts that the limitations period began to run not at the time of the alleged breach, but rather on the date that the plaintiff suffered a loss as a result of the alleged breach. (Docket No. 29 at 5) The plaintiff relies on a provision of the statute stating, "[t]he cause of action on title insurance policies, guaranteeing title to real estate, shall accrue on the date the loss or damage insured or guaranteed against is sustained." Tenn. Code Ann. § 28-3-109(b) (2007). Despite the fact that a title insurance policy is pertinent to the facts underlying the plaintiff's cause of action, the cause of action itself does not arise out of that policy, but rather out of the Agreement between the parties, which the defendant is alleged to have breached. Thus, the cause of action accrued at the time of the alleged breach of that Agreement—that is, on December 20, 2002, the date of the allegedly defective notary acknowledgment. Regardless, the argument is academic, because the plaintiff's claims are timely in either case.

7

from the time of the alleged breach, not from the time that the plaintiff learns of the breach.[5] *See Dean Witter Reynolds, Inc. v. McCoy*, 853 F. Supp. 1023, 1036 (E.D. Tenn. 1994), *aff'd*, 70 F.3d 1271 (6th Cir. 1995). In this case, the alleged breach with respect to the Blackburn Fork Transaction occurred when the defendant failed to ensure that the deed of trust included a valid notary acknowledgment. That omission occurred on December 20, 2002, the date the deed of trust was signed and notarized. The plaintiff's claims regarding the Blackburn Fork Transaction thus are not time-barred, as they were brought within six years of that date.

Finally, the court will address briefly the nature of the plaintiff's putative tort claims. Under Tennessee law, "the gravamen of a cause of action, including the relief sought, controls its characterization as one sounding either in contract or tort, rather than its label or terminology." *Alexander v. Mut. of Okla. Cos.*, No. 97-5138, 1998 U.S. App. LEXIS 16235, at *11 (6th Cir. June 10, 1998) (citing *Bland v. Smith*, 197 Tenn. 683 (Tenn. 1955)). The factual basis for the plaintiff's tort claim is precisely the same as the factual basis for its breach of contract claim. Additionally, the key issue that the plaintiff must prove to establish any of its claims is whether the defendant failed to act in accordance with prudent underwriting principles in breach of the Agreement. Moreover, the damages that the plaintiff seeks are the damages available for breach of contract; the plaintiff does not seek any damages unique to its tort claims. Thus, the gravamen of the plaintiff's tort claims lies in contract, despite the plaintiff's attempt to characterize them as

---

[5]One Tennessee state court has suggested in a recent decision that application of the discovery rule may be appropriate in certain breach of contract cases. *See House v. Edmondson*, No. W2005-00092-COA-R3-CV, 2006 Tenn. App. LEXIS 320, at *46-*48 (Tenn. Ct. App. May 16, 2006). However, the Tennessee Supreme Court has not ruled on that issue. Moreover, the application of the discovery rule in this case would have no effect on the ultimate outcome of the statute of limitations analysis in this case.

8

claims distinct from the contract claims. As such, no distinct tort claims were stated, and no statute of limitations or other further analysis of those claims is required.

## II.     Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To prevail, the moving party must meet the burden of proving the absence of a genuine issue of material fact as to an essential element of the opposing party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001).

In determining whether the moving party has met its burden, the court must view the factual evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). "The court's function is not to weigh the evidence and determine the truth of the matters asserted, 'but to determine whether there is a genuine issue for trial.'" *Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

If the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which she has the burden, however, the moving party is entitled to summary judgment as a matter of law. *See Williams v. Ford Motor Co.*, 187 F.3d 533, 537-38 (6th Cir. 1999). To preclude summary judgment, the nonmoving party "must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v.*

9

*Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 566 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252). If the evidence offered by the nonmoving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment should be granted. *Anderson*, 477 U.S. at 249-52. "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Hill v. White*, 190 F.3d 427, 430 (6th Cir. 1999) (citing *Anderson*, 477 U.S. at 247-49).

## III. Breach of Contract

The plaintiff asserts that the defendant breached the Agreement. To establish a breach of contract under California law, the plaintiff must demonstrate the existence of a contract, that the plaintiff performed that contract, that the defendant breached the contract, and that the plaintiff was thereby injured. *See Reichert v. Gen. Ins. Co.*, 68 Cal. 2d 822, 830 (1968). The existence of the contract and the plaintiff's performance are not in dispute here.

Under the terms of the Agreement, the defendant covenanted to act "in conformity with usual and customary practices and procedures [and] prudent underwriting principles" in carrying out its obligations under the Agreement. (Docket No. 1 Ex. A at 1) The plaintiff alleges that the defendant failed to ensure that the notary acknowledgment in the deed of trust in the Blackburn Fork Transaction contained the date and the names of the purchasers, failed to ensure that the notary acknowledgment in the deed of trust in the East Lake Cove Transaction contained the names of the purchasers, and failed to record the deed of trust in the Malibu Canyon Transaction

10

in a timely manner, and that these omissions are contrary to prudent underwriting principles in breach of the Agreement. (Docket No. 17 Section II.B) The plaintiff further alleges that, as the result of these omissions, it suffered damages in that it was subject to, and ultimately settled to its detriment, three lawsuits arising out of the omissions. (*Id.*)

      *A.*      *Validity of the Notary Acknowledgments in the Blackburn Fork*
              *and East Lake Cove Transactions*

The defendant claims that summary judgment would be inappropriate because there are genuine issues of material fact, in that the plaintiff has not demonstrated that the notary acknowledgments in the deeds of trust in the Blackburn Fork and East Lake Cove Transactions were defective as a matter of Tennessee law.[6] (Docket No. 22 at 6-8)

Tennessee law provides certain requirements for the valid notary acknowledgment of a document. *See* Tenn. Code Ann. § 66-22-101 (2007). Tennessee law further provides that a notary acknowledgment is not necessarily rendered defective by the "unintentional omission by the clerk or other officer of any words in a certificate of acknowledgment," and that an acknowledgment is valid so long as "the substance of the authentication required by law is in the certification." Tenn. Code Ann. § 66-22-110 (2007).

In applying this statute in *Crim v. EMC Mortgage Corp.*, the Tennessee Supreme Court stressed the importance of notary acknowledgments, stating that an acknowledged deed of trust "places subsequent creditors and purchasers on constructive notice." 81 S.W.3d 764, 770 (Tenn. 2002). In *Crim*, a deed of trust was signed by a woman on behalf of both herself and her

---

[6]The defendant asserts that, although the Agreement between the parties is subject to California law, the question of whether the deeds of trust in the three transactions were void is a question of Tennessee law. The plaintiff does not dispute this assertion.

11

husband, who was not present at the time of signing. The notary acknowledgment, however, wrongly indicated that both the woman and her husband appeared in person before the notary. The Court found that the acknowledgment contained "false statements regarding the authentication of the signatures on the deed of trust." *Id.* at 768. Moreover, the Court found that the acknowledgment's noncompliance with the statutory requirements was "apparent on the face of the instrument" and that that discrepancy "lends uncertainty about the legal effectiveness of the instrument." *Id.* The Court rejected the argument that the acknowledgment substantially complied with the statutory requirements, stating that the obvious falsity of the acknowledgment "is more substantial than the simple omission of statutory language or the use of a different, yet equivalent, word" and that "this is not a case where another word or phrase could have been substituted as the substantive equivalent of the language required by statute." *Id.* at 769 (citing *Marsh v. Fleet Mortgage Group*, 12 S.W.3d 229, 454 (Tenn. 2002)) (quotation omitted). Moreover, the Court stated that a substantial compliance test would be inappropriate because the acknowledgment "did not contain simple or minor deviations from the statutorily prescribed form . . . . Instead, the notary failed to use the prescribed statutory form of acknowledgment, with the result that the certificate of acknowledgment contains false statements and indicates a lack of compliance." *Id.* at 769-70.

      Subsequent to the ruling in *Crim*, the Court of Appeals for the Sixth Circuit applied the *Crim* ruling in a case that, like this one, involved the validity of a deed of trust where the notary acknowledgment omitted the names of the deed's signers. *See Gregory v. Ocwen Federal Bank*, 377 F.3d 515 (6th Cir. 2004). In *Gregory*, the Court held that, under *Crim*, a deed of trust was void where the signers' names were omitted from the notary acknowledgment. *See id.* at 519.

12

The Court stated that the notary's failure explicitly to name the deed's signers "bears directly on the ability of a subsequent purchaser of real property to verify that the instrument was signed by the true property owners." *Id.* Moreover, the Court held that the Tennessee statute providing that an acknowledgment is valid so long as it substantially complies with the statutory requirements only applies when words—and not names—are omitted from the acknowledgment unintentionally. *Id.* As was the case in *Gregory*, the notary acknowledgments in the deeds of trust in the Blackburn Fork and East Lake Cove Transactions lacked the names of the deeds' signers. As the requirement that a notary acknowledgment contain the names of the signers is not just "a finicky exaltation of form over substance" but rather "essential to giving the acknowledgment statute the modest substance that the Tennessee legislature thought it deserved," *id.* at 520, the acknowledgments in the Blackburn Fork and East Lake Cove Transactions were defective, rendering the deeds of trust void.

Despite the clear import of *Gregory*, the defendant asserts that the question of whether the omission of names in a notary acknowledgment renders a deed of trust void is an open question under Tennessee law, as the Sixth Circuit did not certify that question to the Tennessee Supreme Court prior to issuing the *Gregory* ruling. The defendant further asserts that *Crim* does not require the conclusion that the omission of names in a notary acknowledgment renders a deed of trust void. This court does not agree with the defendant's conclusion and believes that the Sixth Circuit's articulate and persuasive decision in *Gregory* represents the correct interpretation and application of *Crim*. Although the Tennessee Supreme Court may not have passed judgment on the specific question posed in *Gregory* and here, the implication of the *Crim*

13

decision is clear, and the defendant cannot escape that rule despite its tortured efforts to do so.[7]
Where the notary acknowledgment of a deed of trust omits the names of the deed's signers, the deed is void.[8] There is no basis for the defendant's argument that this presents a genuine issue of material fact.

> B.     *Sufficiency of the Wexton Affidavit*

The defendant also asserts that there is a genuine issue of material fact in that the plaintiff has not demonstrated that the defendant's omissions were inconsistent with prudent underwriting principles.[9]

To support its claims, the plaintiff submitted the affidavit of Charles Wexton, a recoupment attorney employed by the plaintiff (the "Wexton Affidavit"). With respect to the Blackburn Fork and East Lake Cove Transactions, Mr. Wexton attested that:

---

[7]The Tennessee Supreme Court's ruling in *Willingham v. Potter*, on which the defendant also relies, provides little additional support for the defendant's position, standing merely for the proposition that a deed of trust must be read as a whole to determine whether the deed is valid. *See* 131 Tenn. 18, 19-20 (1914).

[8]The deed of trust in the Blackburn Fork Transaction omitted not only the names of the deed's signers, but also the date of the signing. As it is clear that the deed is void because the acknowledgment lacked the signers' names, there is no need to decide here whether an acknowledgment lacking solely a date would also render a deed of trust void under Tennessee law.

[9]The defendant articulates this argument most clearly in connection with the Malibu Cove Transaction. (*See* Docket No. 22 at 9) However, it appears that the defendant also advances this argument with respect to the putative tort claims regarding the Blackburn Fork and East Lake Cove Transactions. (*See* Docket No. 22 at 10) As the plaintiff's tort claims are essentially subsumed by its contract claims as discussed *supra*, this court will consider all of the defendant's arguments in opposition to summary judgment, regardless of whether those arguments were raised in the context of opposing summary judgment of the contract claims or the tort claims. Moreover, the analysis herein applies equally to all of the plaintiff's claims because the evidence that the plaintiff has submitted in support of summary judgment on all of its claims is substantially similar and thus subject to similar objections.

14

> When conducting real estate closings, prudent underwriting principles require [plaintiff's] agents to ensure that notary acknowledgments contained in security instruments, such as deeds of trust, identify the borrowers by name and identify the specific date on which the borrowers executed the document.

(Docket No. 21 ¶ 24). In addition, with respect to the Malibu Canyon Transaction, Mr. Wexton attested that:

> When conducting real estate closings, prudent underwriting principles require [plaintiff's] agents to record security instruments, such as deeds of trust, as soon as reasonably possible after the closing is completed. A delay of approximately four weeks between the completion of a real estate closing and the recording of the necessary security instrument(s) fails to comply with prudent underwriting principles.

(Docket No. 21 ¶ 25)

The defendant asserts that these paragraphs of the Wexton Affidavit should be disregarded because they constitute conclusions of law. (*See* Docket No. 22 at 9, 10) Indeed, it is "well settled that courts should disregard conclusions of law (or 'ultimate fact')" in affidavits submitted in support of summary judgment. *F.R.C. Int'l, Inc. v. United States*, 278 F.3d 641, 643 (6th Cir. 2002).

These paragraphs, however, do not constitute conclusions of law, and thus need not be disregarded. The statements simply demonstrate, to the extent relevant in this matter, what actions are consistent with prudent underwriting principles. Such facts are necessary for this court to evaluate whether the plaintiff has carried its burden of demonstrating that the plaintiff breached the Agreement's provision requiring the defendant to act in a manner consistent with prudent underwriting principles. The fact that the Wexton Affidavit makes stunningly clear that the defendant was in breach is simply a function of the strength of the plaintiff's claim, and does not render the relevant paragraphs of the affidavit conclusions of law that must be disregarded.

15

Moreover, the defendant may not defeat summary judgment simply by standing on the pleadings, but must come forth with some affirmative evidence that demonstrates that there is a genuine issue of material fact for trial. *See Chao*, 285 F.3d at 424. The defendant has not provided any evidence to contradict the facts asserted in the Wexton Affidavit, nor does it attack Mr. Wexton's credentials or the basis of his affidavit. The defendant has not submitted any contrary affidavit or other evidence to support its apparent claim that its omissions did comply with what prudent underwriting principles dictate. Thus, the plaintiff has demonstrated, and the defendant has failed to counter, that there is no genuine issue of material fact as to the defendant's breach of the Agreement.

## IV.    Damages and Attorney's Fees

The plaintiff requests damages in the amount of $107,384.52. This sum represents the cost to the plaintiff of settling the lawsuits arising from the defendant's three breaches of the Agreement, attorney's fees and expenses relating to those lawsuits, and attorney's fees relating to the plaintiff's prior attempts to obtain reimbursement of these costs and fees from the defendant under the Agreement. The defendant claims that there is a genuine issue of material fact as to the scope of the attorney's fees available to the plaintiff and the reasonableness of those fees, and that discovery with respect to the plaintiff's claims for attorney's fees and expenses should be completed before the court rules on the issue of damages.

First, there is no dispute that the plaintiff settled the three lawsuits that arose at the bankruptcy level as the result of the defendant's breaches of the Agreement at a cost of $64,900. The plaintiff is entitled to summary judgment with respect to that aspect of its claim for damages.

16

With respect to the plaintiff's claim for attorney's fees and expenses relating to the three lawsuits at the bankruptcy level, the plaintiff is entitled under the Agreement to such fees and expenses. The plaintiff likewise is entitled under the Agreement to attorney's fees and expenses relating to its prior attempts to obtain reimbursement from the defendant, and to attorney's fees and expenses incurred in the course of the instant lawsuit.

The plaintiff will be required to provide an affidavit with detailed time records and the substance of the expenses that it incurred in defending the three lawsuits at the bankruptcy level, in attempting to obtain reimbursement from the defendant, and in bringing the instant lawsuit. The defendant will then have the opportunity to respond to the plaintiff's claims for attorney's fees and expenses before the court rules on the plaintiff's motion for summary judgment with respect to the attorney's fees and expenses it seeks.

## CONCLUSION

The plaintiff has established that there is no genuine issue of material fact for trial. As such, the plaintiff's Motion for Summary Judgment will be granted.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

17